**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**WASTEWATER SPECIALTIES, LLC**                                           **PLAINTIFF**

v.                              **CASE NO. 4:20-CV-00516-BSM**

**CHARLES P. CLAYTON,** *et al.*                                           **DEFENDANTS**

## ORDER

Wastewater's motion for leave to file a first amended complaint [Doc. No. 30] is granted. Fed. R. Civ. P. 15. Wastewater's motion for leave to file a reply [Doc. No. 35] is granted. Wastewater's motion to compel arbitration [Doc. No. 12] is granted. Wastewater's motion for leave to file a reply [Doc. No. 20] is granted. The joint motion for a scheduling order extension [Doc. No 36] is denied as moot. The case is stayed pending the completion of arbitration.

## I. BACKGROUND

Charles Clayton and Stoney Courville founded Wastewater, an industrial cleaning company, which offers industrial waste hauling and disposal, hydro-blasting, hydro-excavation, hydro-washing, industrial vacuuming, chemical cleaning, grease trap, and other related services. On June 1, 2018, Clayton and Courville sold their interests in Wastewater, and American Industrial Services Group, LLC ("AISG") became Wastewater's parent company. Also on June 1, 2018, Clayton and Courville signed identical noncompetition agreements ("non-competes") and employment contracts with Wastewater and AISG. The non-competes have expired, but the employment contracts have not. Defs.' Prop. F. ¶ 30,

Doc. No. 32. Clayton and Courville remain employed by Wastewater. Am. Compl. ¶ 11.

Wastewater alleges that Clayton and Courville have violated their employment contracts by soliciting customer accounts, disclosing customer information to third parties, attempting to hire Wastewater's employees, and interfering with Wastewater's customer relationships. Am. Compl ¶¶ 16–20; Pl.'s Prop. F. ¶ 43–45, Doc. No. 31.

On May 16, 2019, Clayton and Courville registered a new business, Pro Waste, LLC, in Louisiana, naming themselves and Michael Duplichan—a former Wastewater employee—as managers. Pl.'s Prop. F. ¶ 40. Clayton and Courville told Wastewater that Pro Waste would not compete with Wastewater, since Pro Waste is a commercial trash hauling business for solid waste, whereas Wastewater offers hydro-blasting, hydro-washing, chemical cleaning, and related services. *Id.* ¶ 42. Wastewater alleges that Pro Waste competes with Wastewater as evidenced, in part, by the fact that the type of rental equipment Pro Waste offers is generally used to haul liquid waste. *See* Tr., 209: 1–16, Doc. No. 29. Hauling liquid waste is a service offered by Wastewater, so it is restricted by the employment contracts. *Id.* at 209: 13–15.

A temporary restraining order ("TRO") was granted in state court and extended when the case was removed. Doc. Nos. 5, 6, 15, 19, 24. The TRO enjoined Clayton and Courville from using or disclosing Wastewater's customer information or soliciting its employees, and from assisting anyone else in doing so. Doc. No. 5. A hearing was held. Seven days prior to the hearing, Clayton and Courville transferred their interests in Pro Waste to Clayton's son

and half-brother for negligible consideration. Pl.'s Prop. F. ¶ 46. Duplichan, who is now Pro Waste's CEO, testified that Pro Waste intends to compete with Wastewater. Defs.' Prop. F. ¶ 26; Pl.'s Prop. F. ¶ 47. Wastewater renewed its motion to compel arbitration and stay proceedings at the hearing. Pl.'s Prop. F. ¶ 9. The dispute resolution provision in defendants' employment contracts mandate arbitration when employees engage in competitive activity with Wastewater, solicit or help solicit customer accounts, attempt to entice away employees, interfere with customer relationships, or disclose confidential company information. Emp. Con., Ex. 3 at 9, Doc. No. 3; Br. Supp. Mot. Arb. at 13, Doc. No. 13. Clayton and Courville argue that Wastewater has waived its right to arbitrate by filing a lawsuit in the first place. Resp. Mot. Arb. at 3, Doc. No. 16.

## II. DISCUSSION

A.  <u>Arbitration</u>

The Federal Arbitration Act ("FAA"), provides that arbitration provisions in contracts involving interstate commerce "shall be valid, irrevocable, and enforceable," unless there are legal or equitable grounds to revoke such contracts. 9 U.S.C. § 2. When a controversy falls within the scope of a valid arbitration agreement, courts must stay litigation and compel arbitration. 9 U.S.C. § 3; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004). Litigation between a signatory and nonsignatory to an arbitration agreement may be stayed pending completion of parallel arbitration proceedings that concern "common questions of fact that are within the scope of

the arbitration agreement." *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 252 F.3d 777, 782 (8th Cir. 2001).

### 1. Valid Arbitration Agreement

State contract law determines whether an arbitration agreement is valid. *Faber*, 367 F.3d at 1052. Under Arkansas law, essential contract elements include (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *Hot Spring Cty. Med. Ctr. v. Ark. Radiology Affiliates, P.A.*, 103 Ark. App. 252, 255 (2008). Defendants do not dispute the validity of the dispute resolution provision in the employment contracts. *See* Defs.' Prop. F. ¶ 30.

### 2. Controversy within Scope

The employment contracts require arbitration of "any and all disputes" between Wastewater Specialities and either of the defendants. Emp. Con., Ex. 3 at 9; *see also* 9 U.S.C. § 3. Wastewater's allegations of prohibited competitive behavior are covered.

### 3. Prejudice to Defendants

Defendants argue that compelling arbitration of the claims based on the employment contracts would result in separate, simultaneous proceedings, since the claims based on the expired non-competes would remain in court. Resp. Mot. Compel at 6. This is unpersuasive because "[a]rbitration agreements are rigorously enforced, even if the result is 'piecemeal litigation.'" *Graybar Elec. Co., Inc. v., Weyehaeuser Co.*, 376 F.Supp.3d 939, 949 (W.D. Ark. Mar. 26, 2019) (quoting *AgGrow Oils, L.L.C.,* 252 F.3d at 783)).

*4. Pro Waste*

Pro Waste is a nonsignatory to the employment agreements. Nonetheless, Wastewater's claims against Pro Waste concern "common questions of fact that are within the scope" of the dispute resolution provision in the employment agreements. *AgGrow Oils, L.L.C.,* 252 F.3d at 782. This is because Clayton and Courville transferred their interests in Pro Waste to Clayton's relatives for negligible consideration days before the hearing, *see* Pl.'s Prop. F. ¶ 46, and Wastewater alleges that Clayton and Courville's actions as Pro Waste managers violated the employment agreements, *see* Am. Compl. ¶ 29. Accordingly, the case is stayed as to Pro Waste, pending completion of the parallel arbitration proceedings. *See AgGrow Oils, L.L.C.* 252 F.3d at 782.

### III. CONCLUSION

For the foregoing reasons, Wastewater's motion for leave to file a first amended complaint [Doc. No. 30] is granted. Wastewater's motion for leave to file a reply [Doc. No. 35] is granted. Wastewater's motion to compel arbitration [Doc. No. 12] is granted. Wastewater's motion for leave to file a reply [Doc. No. 20] is granted. The joint motion for a scheduling order extension [Doc. No 36] is denied as moot.

IT IS SO ORDERED this 31st day of March, 2021.

*[signature: Brian S. Miller]*
UNITED STATES DISTRICT JUDGE